IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TRAVIS A. SMITH,

        Petitioner,

    v.                              **CASE NO. 2:04-cv-1010**
                                          **JUDGE SARGUS**
**JEFFERY WOLFE, Warden,**          **MAGISTRATE JUDGE KEMP**
            **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ and supplemental memorandum in response to the petition, and the exhibits of the parties.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that all of petitioner's claims with the exception of claim three be dismissed as procedurally defaulted. As to claim three, respondent is **DIRECTED** to submit an affidavit from defense counsel addressing whether counsel advised petitioner of his right to appeal within twenty (20) days of the date of this order. Respondent may also submit any other documents that will assist in this Court's consideration of whether petitioner was denied his right to appeal because he did not know about, and was not advised of his appellate rights.

## I. PROCEDURAL HISTORY

On March 14, 2002, petitioner was indicted by the Washington County grand jury on trafficking in cocaine, with a forfeiture specification. Exhibit 1 to Return of Writ. On March 19,

2003, while represented by counsel and pursuant to a plea agreement,[1] petitioner pleaded guilty to the indictment without the forfeiture specification. Exhibit 3 to Return of Writ. On April 24, 2003, petitioner was sentenced to three years incarceration. Exhibit 4 to Return of Writ. Petitioner never filed a timely appeal of his conviction and sentence; however, he filed a *pro se* motion for judicial release, which motion was denied on November 12, 2003. Exhibits 5 and 6 to Return of Writ. Petitioner filed a timely appeal of the trial court's decision denying him judicial release, Exhibit 7 to Return of Writ; however, his appeal was dismissed by the appellate court for lack of jurisdiction, because the trial court's ruling on the motion for judicial release did not constitute a final appealable order. Exhibit 10 to Return of Writ. On January 6, 2004, petitioner filed a *pro se* motion for delayed appeal with the Fourth District Court of Appeals. Exhibits 11 and 12 to Return of Writ. As cause for his untimely filing, petitioner asserted that his attorney advised him that he could not appeal his guilty plea. Exhibit 12 to Return of Writ. On March 31, 2004, the appellate court denied petitioner's motion for delayed appeal for failure to show good cause for the untimely filing. Exhibit 13 to Return of Writ. Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. He asserted the following propositions of law:

> 1. Although there is no constitutional right to appeal a criminal conviction, once [the] State grants right to appeal it must follow procedures comporting with the Fourteenth Amendment.
>
> 2. Due process claims are implicated when a defendant is denied adequate opportunity to present his claims and to receive adjudication on merits, or when defendants are treated differently in such a way that affects their ability to pursue a meaningful appeal.

------

[1] Petitioner agreed to also plead guilty to a breach of recognizance bond in Case Number 02-CR-292, and the state agreed to dismiss that charge at sentencing. *See* Exhibit 3 to Return of Writ.

2

> 3.  Defendant-appellant has been denied his constitutional right to effective assistance of counsel, [and] has in fact been denied his constitutional right to due process of law and equal protection.

Exhibit 15 to Return of Writ.  On September 1, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Exhibit 16 to Return of Writ.  On April 28, 2004, petitioner filed a second motion for delayed appeal.  Exhibits 17 and 18 to Return of Writ.  On May 24, 2004, the appellate court again denied petitioner's motion for delayed appeal, and explicitly advised him that

> most if not all of the issues he wishes to raise would be inappropriate on direct appeal because they would involve matters outside of the record and only matters of record may be considered on direct appeal. The proper remedy for raising the claim of ineffective assistance of trial counsel based upon matters outside the record is a petition for postconviction relief under R.C. 2953.21 *et seq.*

Exhibit 19 to Return of Writ.  On June 10, 2004, petitioner filed a "Petition for Redress of Grievances and to Vacate the Void Judgment that is Unconstitutional, Thus Void and Null," with the trial court. Exhibit 20 to Return of Writ.  He asserted as follows:

> 1.  [Petitioner was denied ] the protection afforded the Fifth Amendment of the United States Constitution against self-incrimination.
>
> 2.  [Petitioner was denied] due process of law under the Fifth and Fourteenth Amendments to the United States Constitution.
>
> 3.  [Petitioner was denied] equal protection of the law under the Fourteenth Amendment to the United States Constitution.
>
> 4.  [Petitioner was denied] the right to even reasonably effective assistance of counsel.

Exhibit 20 to Return of Writ.  On July 26, 2004, petitioner also filed with the trial court a petition for post conviction relief, in which he challenged the imposition of financial sanctions.  Exhibit 22 to

Return of Writ. Petitioner requested the appointment of counsel and an evidentiary hearing. Exhibit 23 to Return of Writ. On November 8, 2004, petitioner's post conviction petition, and his request for counsel and evidentiary hearing were denied. Exhibits 24 and 25 to Return of Writ. Petitioner filed a timely appeal of the appellate court's decision. He asserted as follows:

> 1. The trial court committed prejudicial and reversible error when it failed in its legal duty to afford the petitioner his constitutional right to petition the court for redress of grievances pursuant to the First Amendment under the United States Constitution, and Section 16, Article I of the Ohio Constitution.

> 2. The trial court committed prejudicial reversible error in denying the post conviction petition, as all state court judges are bound by the United States Constitution, federal law and its treaties.

Exhibit 27 to Return of Writ. On September 13, 2005, the appellate court dismissed petitioner's post conviction petition for lack of jurisdiction, concluding that the petition was untimely. Exhibit 32 to Return of Writ. Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. He asserted the following propositions of law:

> 1. Pursuant to Article VI of the United States Constitution, all state court judges are bound by the federal Constitution, law and its treaties.

> 2. The Supreme Court of the United States has found the federal sentencing statutes to be unconstitutional. Ohio's sentencing statutes are similar to the federal system and are likewise unconstitutional.

> 3. Ohio's post conviction statutes are unconstitutional and otherwise contrary to clearly established federal law.

> 4. A defendant-appellant that has been denied his constitutional right to effective assistance of counsel has been denied his constitutional rights to due process of law, and equal protection of the law. Thus, the conviction cannot stand as the defendant has been denied his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

Exhibit 33 to Return of Writ. On February 8, 2006, the Ohio Supreme Court denied leave to appeal

4

and dismissed the appeal as not involving any substantial constitutional question.  Exhibit 34 to

Return of Writ.

On October 19, 2004, petitioner filed the instant *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254.  He asserts that he is in the custody of the respondent in violation of the

Constitution of the United States based upon the following grounds:

> 1.   The conviction and sentence is void pursuant to the Fifth Amendment under the United States Constitution's clause of protection against self-incrimination.
>
> On March 27, 2003, the petitioner testified before the Washington County grand jury while trial counsel was not present.
>
> On April 8, 2003, petitioner entered his change of plea.
>
> On April 24, 2003, the trial court... imposed a three year prison term based on the testimony (in part) before the Washington County grand jury.
>
> 2.   The conviction and sentence is void pursuant to the Sixth Amendment under the United States Constitution under *Apprendi v. Washington* (2000), 530 U.S. 466, 490, 120 S.Ct. 2348; *Blakely v. Washington* (2004), 542 U.S. –, 124 S.Ct. 2531.
>
> 3.  The conviction and sentence is void [under] due process of law and the equal protection clauses of the United States Constitution, [and] under the Fifth and Fourteenth Amendments, and under *Wolfe v. Randle* (S.D. Ohio 2003), 267 F.Supp.2d 743 (citing *Griffin v. Illinois, Douglas v. California*, and *Evitts v. Lucey*).
>
> 4.  The conviction and sentence is void pursuant to the Fourteenth Amendment of the United States Constitution's Equal Protection Clause.
>
> On January 6, 2004, petitioner filed his motion for leave in which to file a delayed appeal....
>
> On March 31, 2004, the Fourth Appellate District Court of Appeals denied this motion.

On July 2004, Jason Lee Strickler... filed his motion for leave in which to file a delayed appeal...

On September 7, 2004, the Fourth Appellate District Court of Appeals, Washington County, Ohio granted Jason Lee Strickler... leave in which to file his delayed appeal.... Furthermore, the court held that the trial court's failure to inform Jason Lee Strickler of his right to appeal was contrary to Ohio law....

Accordingly, petitioner has been denied equal protection of the law.

5. The conviction and sentence is void pursuant to the Fifth and Fourteenth Amendments of the United States Constitution's Due Process of Law clauses [sic]....

Petitioner was promised for [his] testimony before the grand jury, Case Number 02-CR292 would be dismissed and treatment in lieu of conviction would be imposed upon case number 02-CR000089.

\*\*\*

Accordingly, the conviction and sentence is void pursuant to the Due Process Clause of the United States Constitution on at least two grounds:

1. Petitioner did not understand the full consequences of his [guilty] plea and;

2. The plea was induced by unfulfilled... promises.

6. The conviction and sentence is void pursuant to the Fourteenth Amendment to the United States Constitution's Equal Protection and Due Process Clause....

Petitioner was denied immunity from prosecution in return for his testimony to the grand jury.

7. The conviction and sentence is void pursuant to the Fifth and Fourteenth Amendments to the United States Constitution's Due Process Clause.......

On March 27, 2003, petitioner testified under advice of trial counsel

(Dennis Sipe) and to his understanding, as presented by counsel, the court would impose treatment in lieu of conviction for his testimony and cooperation.

Accordingly, the plea of guilty was not knowingly, intelligently, or voluntarily entered, and is therefore void.

Proceedings were stayed from November 16, 2005, to February 24, 2006, pending petitioner's exhaustion of state court remedies. Doc. Nos. 28, 30. It is the position of the respondent that claim two is procedurally defaulted or without merit, and the remainder of petitioner's claims likewise are procedurally defaulted.

## II.  PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459  U.S.. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a

7

state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).

In claim one, petitioner asserts that his conviction and sentence are void as obtained in violation of his privilege against self incrimination. Specifically, petitioner alleges that his guilty plea was not knowing, intelligent, or voluntary because he was promised treatment in lieu of conviction in return for his grand jury testimony. *Traverse,* at 22, Doc. No. 10. In claim five, petitioner asserts that his guilty plea was not knowing, intelligent, or voluntary because it was induced by unkept promises. In claim six, petitioner asserts that he was "denied immunity from prosecution in return for his testimony to the grand jury." *See Petition*. In claim seven, petitioner asserts that his guilty plea was not knowing, intelligent or voluntary because it was "his understanding, as presented by counsel, [that] the court would impose treatment in lieu of conviction for his testimony and cooperation." *Id.*

All of the foregoing claims rely on matters not readily apparent from the face of the record and therefore were properly raised in petitioner's petition for post conviction relief pursuant to

O.R.C. §2953.21.  *See* Exhibit 20 to Return of Writ.  However, the state appellate court explicitly

denied petitioner's post conviction action as untimely:

> Travis A. Smith appeals the judgment entry of the trial court effectively dismissing his petition for post-conviction relief. Smith contends that the trial court's dismissal violated his constitutional right to meaningful access to the courts, due process of law, and equal protection. Because we find that Smith failed to timely file his petition or demonstrate by clear and convincing evidence that: (1) he was unavoidably prevented from discovering facts necessary to present his claim; or (2) the United States Supreme Court recognized a new right that applies retroactively to his situation; and (3) but for constitutional error at trial, no reasonable factfinder would have found him guilty of the offense of which he was convicted, we disagree. Accordingly, we dismiss this appeal for lack of jurisdiction.

> On March 14, 2002, the grand jury indicted Smith for trafficking in cocaine in violation of R.C. 2925.03(A) & (C)(4)(d), a third degree felony. Smith initially entered a plea of not guilty. He later amended his plea to guilty. On April 28, 2003, the trial court sentenced Smith to three years in prison. In sentencing Smith to a term in excess of the statutory minimum term, the trial court specifically found that Smith served a previous prison sentence for another crime.

> In November 2003, Smith filed a *pro se* motion for judicial release and a motion requesting evaluation for a treatment based facility. The trial court denied both motions by separate entries on November 12, 2003. Smith filed separate appeals, which we consolidated in Case No. 03CA62. We then dismissed both branches of Smith's appeal for lack of a final appealable order.

> Smith filed a third appeal on January 6, 2004, Case No. 04CA2, challenging the trial court's April 28, 2003 judgment entry sentencing him to three years in prison. We dismissed that appeal because Smith did not timely file it. Subsequently, Smith filed a motion for leave to file a delayed appeal in Case No. 04CA17, alleging that he did not file a timely appeal because he was unaware that he could appeal a guilty plea. We denied Smith's motion, holding that ignorance of the law is not a valid excuse for failure to file a timely appeal of right. We noted that most of the issues Smith wished to raise would be inappropriate on direct appeal because they would involve matters outside the record. Therefore, we suggested that a petition for post-conviction relief would be a more appropriate vehicle for Smith to pursue his

9

claims.

On June 10, 2004, Smith filed a petition to vacate the trial court's April 28, 2003 judgment, alleging that the judgment was obtained in violation of his constitutional rights, including his right to effective assistance of counsel. Smith then moved the trial court to appoint counsel, conduct an evidentiary hearing, and order Smith's presence at said hearing. The trial court denied Smith's motion on November 8, 2004.

Smith appeals, raising the following assignments of error: "1) THE TRIAL COURT COMMITTED PREJUDICAL REVERSABLE ERROR, WHEN IT FAILED IN ITS LEGAL DUTY TO AFFORD THE [PETITIONER] HIS CONSTITUTIONAL RIGHT TO PETITION THE COURT FOR REDRESS OF GRIEVANCES. PURSUANT TO THE FIRST AMENDMENT UNDER THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION. 2) THE TRIAL COURT COMMITTED PREJUDICIAL REVERSABLE ERROR IN DENYING THE POST-CONVICTION PETITION, AS ALL STATE COURT JUDGES ARE BOUND BY [T]HE UNITED STATES CONSTITUTION, FEDERAL LAW AND ITS TREATIES."

In its brief, the state argues that Smith's petition for post-conviction relief was not timely filed, and, therefore, the trial court lacked jurisdiction to entertain the petition or grant the relief sought. Thus, the state contends that the trial court lacked jurisdiction to grant an evidentiary hearing, and that, in the absence of sufficient operative facts to entitle him to a hearing, Smith was not entitled to the appointment of counsel. We agree.

R.C. 2953.21 governs petitions for post-conviction relief. The statute permits any person convicted of a criminal offense to petition the sentencing court for relief for constitutional violations that render the judgment either void or voidable under the Ohio Constitution or the Constitution of the United States. R.C. 2953.21(A)(1)(a). A post-conviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905, citing *State v. Steffen (*1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, citing *State v. Crowder (*1991), 60 Ohio St.3d 151, 573 N.E.2d 652. There is no constitutional right to post-conviction review, and, therefore, a petitioner receives no more rights than those granted by the statute. *Id.*

R.C. 2953.21(A)(2) specifically provides that, if a person convicted of a criminal offense has not directly appealed his conviction, he must file his petition for post-conviction relief no later than one hundred eighty days after the expiration of the time for filing a direct appeal. Here, the trial court issued its sentencing entry on April 28, 2003. Accordingly, Smith's deadline for filing a direct appeal was May 28, 2003. App.R. 4(A). The deadline for filing his petition for post-conviction relief passed one hundred eighty days later, on November 24, 2003. R.C. 2953.21(A)(2). However, Smith did not file his petition for post-conviction relief until June 10, 2004--more than six months after the statutory deadline.

Pursuant to R.C. 2953.23(A)(1), a court may only entertain an untimely petition for post conviction relief in two limited circumstances: "(1) where the petitioner was unavoidably prevented from discovering the facts that the petition is predicated upon or (2) the United States Supreme Court has recognized a new federal or state right that applies retroactively to the petitioner and the petition asserts a claim based on that new right." *State v. Beaver* (1998), 131 Ohio App.2d 458, 462.

Here, Smith's argument implies that he was unavoidably prevented from discovering the facts supporting his claim for relief because his counsel informed him, and R.C. 2929.20(B)(2) provides, that an offender may not file a motion for judicial release until he has served one hundred eighty days of his sentence. Thus, Smith claims he was unaware and unable to discover that his sentence did not comport with the promises his counsel allegedly made to induce his guilty plea until: (1) he served one hundred eighty days of his sentence; and (2) the trial court denied his motion for judicial release. This argument is without merit.

In his petition below, and in his briefs here, Smith contends that he received ineffective assistance of counsel because, *inter alia*: (1) his attorney induced him to enter his guilty plea with the promise that he would be sentenced to a drug treatment program and serve no prison time; (2) at sentencing, his attorney informed him that the terms of the plea agreement required him to serve one hundred eighty days of a three year prison sentence before the court would grant him judicial release; and (3) he was entitled to immunity because he testified before the grand jury in violation of his fifth amendment right against self incrimination.

Although Smith failed to request transcripts of any proceedings below

11

in the context of this appeal, the record contains the trial court's journal entry regarding Smith's change of plea hearing. In that entry, the trial court states it specifically informed Smith that: (1) the maximum prison term he could receive was five years; (2) the court could also impose community control sanctions, including driver's license suspension, residential sanction of up to six months at a county jail, a community control facility, or halfway house; and (3) the court could impose financial sanctions, including up to a $7,500 maximum fine, restitution, reimbursement, and/or costs of prosecution.

Additionally, the trial court's entry states: " * * * the Assistant Prosecuting Attorney advised the Court of the underlying agreement upon which the plea is based, that being that [Smith] would also plead guilty to Breach of Recognizance Bond in Case Number 02-CR-292, but that charge will be dismissed by the state at the sentencing hearing provided [Smith] appears at the sentencing as scheduled. The state will not require [Smith] to testify in the co-defendant's case, but should [Smith] be subpoenaed by the co-defendant, he will testify truthfully as to the facts he admits herein. [Smith] agrees to testify at a session of the Washington County Grand Jury regarding the Breach of Recognizance issue and his failure to appear at jury trial on October 28, 2002. The State will also dismiss the Forfeiture of the Thunderbird automobile specification."

Thereafter, the trial court noted: "Whereupon, [defense counsel] advised the Court that the underlying agreement as recited by the Assistant Prosecuting Attorney was correct, after which [Smith] advised the Court that the underlying agreement as stated was correct, and further advised that there was no other promise or inducement to him by anybody to cause him to plead guilty to the charge of the Indictment herein."

Thus, despite Smith's current claims, the record reflects that Smith was aware that his plea agreement did not include the promise of: (1) a sentence to a drug treatment program with no prison time; (2) judicial release after he served one hundred eighty days of a three year prison sentence; or (3) immunity in exchange for his testimony before the grand jury. Therefore, Smith's claims that he was unavoidably prevented from discovering the facts supporting his claim for post-conviction relief beyond the one hundred eighty day time statutorily prescribed for the filing of such a petition are meritless.

In his reply brief, Smith also asserts that the United States Supreme Court's decisions in *Blakely v. Washington* (2004), 542 U.S. 296, 124

S.Ct. 2531, 159 L.Ed.2d 403; and *United States v. Booker* (2005), ---U.S. ----, 125 S.Ct. 738, 160 L.Ed.2d 621, constitute the Court's recognition of a new federal or state right that applies retroactively to persons in Smith's situation. Specifically, Smith argues that trial court erred by sentencing him to a three-year prison term when the statutory minimum sentence for his offense was only one year.

The sentencing scheme at issue in *Blakely* is a determinate scheme that mandates a particular sentence in response to particular sets of facts. *Blakely*, 124 S.Ct. at 2540. It then permits a trial judge to impose a sentence above the statutory maximum sentence if he finds "substantial and compelling reasons to justify an exceptional sentence.*" Id.* at 2535. (Citation omitted.) In finding the *Blakely* sentencing scheme unconstitutional, the United States Supreme Court reaffirmed the rule it articulated in *Apprendi,* holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Blakely*, 124 S.Ct. at 2536, quoting *Apprendi v. New Jersey* (2000), 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. The *Blakely* court noted that the prescribed statutory maximum sentence for *Apprendi* purposes is not "the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Blakely,* 124 S.Ct. at 2537.

Here, Ohio's sentencing scheme provides that the sentence for a third degree felony shall be one, two, three, four, or five years. R.C. 2929.14(A)(3). Then, R.C. 2929.14(B) creates a presumption in favor of the minimum prison term unless the trial court finds that a longer prison term is appropriate because: (1) the offender was serving a prison term at the time of the offense, or the offender previously had served a prison term; or (2) the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

Thus, Ohio's sentencing scheme is indeterminate in that it presents a range of sentences permissible for a given crime. Unlike the sentencing scheme at issue in *Blakely,* Ohio's sentencing scheme does not provide statutory exceptions that would allow the trial court to exceed the maximum punishment allowed for a third degree felony. "Put simply, the facts reflected in a jury verdict convicting a defendant of a third degree felony allow a sentence of up to five years. R.C. 2929.14(B) merely limits judicial discretion in sentencing within that range." *State v. Lucas*, Marion App. No. 9-04-40, 2005-Ohio-1092.

The holding in *Blakely* is expressly inapplicable to indeterminate sentencing schemes. *Blakely,* 124 S.Ct. 2540. We have previously held that *Blakely* is inapplicable to the Ohio sentencing scheme. *State v. Sideris*, Athens App. No. 04CA37, 2005-Ohio-1055; *State v. Hardie*, Washington App. No. 04CA23, 2004-Ohio-7277, discretionary appeal allowed, 105 Ohio St.3d 1498, 2005-Ohio-1666; *State v. Scheer*, 158 Ohio App.3d 432, 816 N.E.2d 602, 2004- Ohio-4792; *State v. Wilson*, Washington App. No 04CA18, 2005-Ohio-830; *State v. Ward*, Washington App. No. 04CA25, 2005-Ohio-1580.

The Supreme Court reiterated the importance of the distinction between determinate and indeterminate sentencing schemes when it applied *Blakely* to the federal sentencing guidelines in *Booker,* stating: "We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. *See Apprendi*, 530 U.S., at 481, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). * * * For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Booker*, 125 S.Ct. at 750. The *Booker* court held "we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756.

We have previously determined that *Blakely* remains inapplicable in Ohio, even after *Booker. See, Sideris, supra* (affirming the trial court's judgment sentencing defendant to more than the minimum sentence because trial courts have broad discretion to impose sentences within the statutorily prescribed range, and the necessary findings are not the type traditionally reserved to a jury). *See, also, Ward*, and *Wilson*, supra. Other Ohio courts of appeal that have considered the issue agree with this conclusion. *Id*., citing *State v. Trubee*, Marion App. No. 9-03-65, 2005-Ohio-552; *State v. Abdul-Mumin*, Franklin App. No. 04AP-485, 2005-Ohio-522. *See, also, State v. Montgomery*, Clermont App. No. CA2004-06-047, 2005-Ohio-2371; *State v. Burns*, Summit App. No. 22198, 2005-Ohio-1459. *But, see, State v. Bruce*, Hamilton App. No. C-040421, 2005-Ohio-373, *motion to certify allowed*, *105* Ohio St.3d 1515, 826 N.E.2d 313, 2005-Ohio-1880, *appeal allowed*, 105 Ohio St.3d 1516, 826 N.E.2d 314, 2005-Ohio-1880.

14

Here, the trial court sentenced Smith to a prison term in excess of the minimum term, but less than the maximum term for his offense as prescribed by R.C. 2929.14(A)(3). The trial court had the authority to do so because it found that Smith had previously served a prison term. R.C. 2929.14(B)(1). Even if *Apprendi, Blakely*, and *Booker* did apply here, they specifically permit a trial court to consider the defendant's prior conviction to increase the penalty for a crime within, and even beyond, the statutory range. *Apprendi*, 530 U.S. at 490; *Blakely*, 124 S.Ct. at 2536; *Booker,* 125 S.Ct. at 756. Accordingly, we conclude that Smith's argument that *Blakely* and *Booker* constitute the United States Supreme Court's recognition of a new federal or state right that applies retroactively to persons in Smith's situation is without merit.

Furthermore, Smith cannot satisfy the requirement of R .C. 2953.23(A)(2) that, but for constitutional error at trial, no reasonable factfinder would have found him guilty of the offense for which he was convicted because Smith was convicted pursuant to his own guilty plea, not by reason of trial. *See, e.g., State v. Halliwell* (1999), 134 Ohio App.3d 730, 735, 732 N.E.2d 405.

Based upon the foregoing, we conclude that the trial court lacked subject matter jurisdiction over Smith's petition for post-conviction relief, and, therefore, lacked jurisdiction to grant Smith an evidentiary hearing. Additionally, we note that an indigent petitioner like Smith has neither a state nor a federal constitutional right to the representation of counsel in a post-conviction proceeding. Crowder, supra at 152, 573 N.E.2d 652. Pursuant to R .C. 120.16(A)(1) and (D), the county public defender is not required to prosecute any post-conviction remedy unless he "is first satisfied that there is arguable merit to the proceeding." In *Crowder*, the Ohio Supreme Court held that the public defender statute only requires the appointment of counsel for post-conviction proceedings if: (1) the trial court determines the petitioner's allegations warrant an evidentiary hearing; and (2) the public defender determines that the petitioner's allegations have arguable merit. *Crowder* at paragraphs one and two of the syllabus.

Accordingly, we dismiss this appeal for lack of jurisdiction.

Exhibit 32 to Return of Writ.

In claim four, petitioner asserts that he was denied equal protection because the Ohio Court of Appeals granted Jason Strickler's motion for delayed appeal, but denied petitioner's motion for

15

delayed appeal.  *Traverse*, at 28-29.  Such claim, likewise, involves evidence not readily apparent from the face of the record, and therefore would be properly raised in a petition for post conviction relief pursuant to O.R.C. §2053.21.  However, it does not appear from the record that petitioner has ever presented such claim to the state courts.  Further, any attempt now to present such claim to the state courts in an untimely and successive petition would most certainly be barred.[2]  The state courts

─────────────────

[2]  O.R.C. §2953.23 provides:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an inmate for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under section 2953.82 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

were never given an opportunity to enforce the procedural rule at issue here due to the nature of petitioner's procedural default.

This Court deems the first and second parts of the *Maupin* test have been met as to all of the foregoing claims.

The Court must next decide whether the procedural rules at issue constitute adequate and independent bases upon which to foreclose review of the petitioner's federal constitutional claims. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. *See Maupin v. Smith*, 785 F.2d at 138. Under this analysis, the procedural rules barring claims one, and claims five through seven constitute adequate and independent state grounds for denying relief. The state courts must be given a full and fair opportunity to remedy alleged constitutional defects. The time requirement for filing post conviction actions and the requirement that all available claims be raised in the first such proceeding serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Finally, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole*, 2 Ohio St.3d 112 (1982)*; State v. Ishmail,* 67 Ohio St.2d 16 (1981)*; State*

_____

> As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code.
>
> (B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

 The record does not reflect that petitioner could meet these requirements.

*v. Perry,* 10 Ohio St.2d 175 (1967).

The Court concludes that petitioner waived his right to present claims one, and claims four through seven for federal habeas review.  Petitioner can still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violations that he alleges.  Petitioner has failed to demonstrate either cause for his procedural defaults or actual prejudice resulting from the alleged constitutional violations.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333  (1992).  After review of the record, the Court does not deem this to be such a case.

### III.  CLAIM TWO

In claim two, petitioner asserts that his sentence violates *Blakely v. Washington, supra*, because the trial judge sentenced him to more than the minimum sentence based upon factors not admitted by him or determined by a jury.[3]  Petitioner first presented this claim to the state courts in his reply brief on appeal from the trial court's denial of his petition for post conviction relief.  The state appellate court rejected petitioner's claim and, as discussed, *supra*, dismissed petitioner's appeal because he had failed to meet the exceptions under O.R.C. §2953.23 for filing an untimely post conviction petition.

_____

[3]  Petitioner also asserts that he was denied his right to confront witnesses, because co-defendant's statement[s] were used "in trial proceedings."  *See Petition*.  Petitioner provides no further specificity regarding this allegation, and the Court presumes, since this case did not involve a trial, but a guilty plea, that such allegation likewise involves a claim under *Blakely v. Washington, supra.*

In its dismissal of petitioner's post conviction appeal, the state appellate court addressed the lack of merit of petitioner's *Blakely* claim in order to determine whether petitioner had met the exception for the untimely filing of his post conviction petition under O.R.C. §2953.23(A)(2), which provides in relevant part:

> (A) ... [A] court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> ***
>
> (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

*See* discussion*, supra*.  The state appellate court's consideration of petitioner's *Blakely* claim in this context does not constitute a waiver of the state court's enforcement of its procedural rules.  *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989):

> [A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [Wainwright v. Sykes, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id.; see also McBee v. Abramajtys,* 929 F.2d 264, 267 (6th Cir. 1991).

Because the state court did not reach the merits of this claim for substantive review, a

procedural default was enforced in state court.  Thus, respondent contends that petitioner has procedurally defaulted his *Blakely* claim because petitioner failed to present such claim in his initial post conviction petition in the state trial court, and because his petition for post conviction relief was dismissed as untimely.  *Supplemental Response*, at 13, Doc. No. 32.  While this Court is not persuaded by respondent's argument that petitioner procedurally defaulted his *Blakely* claim by failing to properly present such claim in post conviction proceedings, the claim nonetheless is waived due to petitioner's failure to present the issue to the state courts.

*Blakely* was not decided until June 24, 2004, fourteen days after petitioner filed his initial post conviction petition in the state trial court.  Although the trial court did not deny petitioner's post conviction petition until November 8, 2004, and petitioner therefore could have presented his *Blakely* claim to the state trial court by proposing an amendment to his petition or raised the claim in his initial appeal from the trial court's denial of his post conviction petition, petitioner's claim that his sentence violates *Blakely* is readily apparent from the face of the record, and therefore would be properly raised on direct appeal.  However, petitioner was sentenced on April 24, 2003, prior to *Blakely*.  He filed his January 6, 2004, and April 28, 2004, motions for delayed appeal with the Fourth District Court of Appeals, and his May 14, 2004, appeal to the Ohio Supreme Court all prior to *Blakely*.  Such claim, therefore, could not have been raised in any of such proceedings.  Further, although the state appellate court denied petitioner's motion(s) for delayed appeal, and directed him to present his off-record claims in a petition for post conviction relief, *see* Exhibit 19 to Return of Writ, the United States Court of Appeals for the Sixth Circuit has held that Ohio's Appellate Rule 5(A), the provision which governs the filing of delayed appeals in the Ohio appellate courts, does not constitute an adequate and independent state ground to preclude federal habeas corpus review:

20

[W]e conclude that the state court's refusal to allow [petitioner] to file a delayed appeal under Rule 5(A) does *not* constitute an "adequate" ground to bar habeas review. *See Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986) (holding that a procedural forfeiture must be based on an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim). The district court denied Deitz's motion because he "failed to set forth sufficient reasons for having failed to perfect a timely appeal." But Rule 5(A) does not specify the criteria the courts should use in determining whether to grant a delayed appeal. Instead, it simply requires that the defendant set forth the reasons for the failure to perfect an appeal of right.

The decision to grant or deny a motion for leave to appeal pursuant to rule 5(A) is therefore solely within the discretion of the appellate court. *State v. Fisher,* 35 Ohio St.3d 22, 517 N.E.2d 911, 914 (1988). A rule that grants such discretion to the courts is not "firmly established and regularly followed" so as to be adequate within the meaning of *Maupin. See Hutchison v. Bell,* 303 F.3d 720, 738 (6th Cir.2002) (ruling that a Tennessee procedure was adequate for purposes of enforcing a procedural bar because "Tennessee's due process exception does not grant unfettered discretion to state courts in applying procedural default rules.").

The Magistrate's Report and Recommendation makes much of the fact that Deitz waited four years before raising the issue of ineffective assistance of counsel in his motion to file a delayed appeal. But Rule 5(A) does not set a time limit for the filing of a delayed appeal. Although some Ohio courts have refused to grant motions for leave to file a delayed appeal because of the undue lapse of time, others have allowed appeals long after the time for filing a direct appeal has expired. *Compare State v. Robinson,* No. 04AP-713, 2004 WL 1945687 (Ohio Ct.App. Sept. 2, 2004) (unpublished) (holding that a three-and-a-half-year delay in filing a motion was unreasonable), *with State v. Simmons,* No. 69238, 1997 WL 83124 (Ohio Ct.App. Feb. 27, 1997) (unpublished) (noting that a motion to file a delayed appeal had been granted in the case more than five years after the defendant pled guilty).

*Deitz v. Money*, 391 F.3d 804, 810-11 (6th Cir. 2004).

Still, the Ohio Supreme Court did not dismiss petitioner's appeal until September 1, 2004,

approximately 2 ½ months after *Blakely*. Therefore, and contrary to respondent's argument here, this case does not involve retroactive application of *Blakely*, since petitioner's direct appeal was still pending at the time *Blakely* was issued. *See e.g. Schardt* v. *Payne*, 414 F.3d 1025, 1033 (9th Cir. 2005), citing *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987)("[F]ailure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"). However petitioner never fairly presented his *Blakely* claim to the state courts. He could have done so on appeal to the Ohio Supreme Court.

Petitioner's *Blakely* claim is waived due to his failure to present such claim to the Ohio Supreme Court. The state courts therefore were never given an opportunity to enforce the procedural rule due to the nature of petitioner's procedural default. Further, for the reasons previously discussed, the procedural rule barring claim two constitutes an adequate and independent state ground for denying relief. The state courts must be given a full and fair opportunity to remedy alleged constitutional defects. The time limitations for filing appeals and the requirement that all available claims be asserted in the first such proceeding serve the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Also, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra*. Finally, petitioner has failed to establish either cause or prejudice for his procedural default of this claim. As previously discussed, the record fails to reflect that this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier, supra; Sawyer v. Whitley, supra*.

In view of all of the foregoing, the Magistrate Judge concludes that petitioner has waived his

22

right to present claim two in federal habeas corpus review.

## IV.  CLAIM THREE

In claim three, petitioner asserts that he was denied his right to appeal because neither the trial court nor his attorney advised him of his right to appeal or his right to appointed counsel on appeal, because his attorney told him that he had no right to appeal, and because the state appellate court thereafter denied his motion for delayed appeal.  Respondent contends that this claim, too, is procedurally defaulted, because petitioner failed to file a timely appeal, and the state appellate court denied petitioner's motion for delayed appeal pursuant to Ohio Appellate Rule 5(A).  *See Supplemental Response*, at  17-18, Doc. No. 32.  Respondent's argument is not well taken.

Petitioner's allegations in claim three were properly presented to the state courts in petitioner's motion for delayed appeal as grounds for his untimely appeal.  *See* Exhibits 12 and 13 to Return of Writ.  Additionally, as previously discussed, the United States Court of Appeals for the Sixth Circuit has held that Ohio's Appellate Rule 5(A) does not constitute an adequate and independent state ground to preclude review of petitioner's federal constitutional claim.  *Deitz v. Money*, *supra,* 391 F.3d 804, 810-11 (6th Cir. 2004).

Further, in *Wolfe v. Randle,* 267 F.Supp.2d 743, 746-48 (S.D. Ohio 2003), the United States District Court for the Southern District of Ohio, Western Division, granted a petition for a writ of habeas corpus on grounds similar to the allegations raised here, concluding that "due process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights."  *Id*., at 746.   The District Court reasoned:

> [O]nce the state grants the right to appeal it must follow procedures comporting with the Fourteenth Amendment. *Evitts v. Lucey*, 469 U.S.

387, 403, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). After deciding that a right to appeal is essential, the state cannot then deny defendant due process. Due Process claims are implicated when a defendant is denied an adequate opportunity to present his claim and receive an adjudication on the merits, or when defendants are treated differently in such a way that affects their ability to pursue a meaningful appeal. *Id.* at 402, 405, 105 S.Ct. 830. Ohio has granted all defendants the right to appeal following a criminal conviction, and as a result must conform its procedures to the standards of due process. Ohio R.Crim.P 32.

... [D]ue process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights. *Cf. Peguero v. U.S.*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18; *White v. Johnson*, 180 F.3d 648, 652 (5th Cir.1999). The Supreme Court has addressed the procedural requirements for indigent defendants in the appellate process on several occasions. In *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Court held that an indigent defendant is entitled to a transcript in order to pursue an appeal. The Court later held that indigent defendants had a right to counsel on their first appeal, *Douglas v. California*, 372 U.S. 353, 365-57, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and that all defendants have the right to effective assistance of appellate counsel, *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The right of notice is more fundamental than the rights previously guaranteed by the Supreme Court. Precedent therefore dictates that failure to inform an indigent defendant of their appellate rights violates due process.... [A] defendant is not necessarily denied a constitutional right when a state court denies a request for a delayed appeal. However, due process rights are implicated when a delayed appeal is the result of a lower court's failure to ensure that an indigent defendant's appellate rights are protected.

***

.... The Constitution is violated if a convicted defendant is not given the right to appeal "by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel." *Jacobs v. Mohr*, 265 F.3d 407, 419 (6th Cir.2001) (citing *Goodwin v. Cardwell*, 432 F.2d 521, 522-23 (6th Cir.1970)). The defendant has ultimate authority in making certain fundamental determinations pertaining to his case, including the right

to appeal. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The authority to pursue an appeal, even one following a guilty plea, is the defendant's alone. *Marrow v. United States,* 772 F.2d 525, 530 (9th Cir.1985). The decision to appeal is not the determination of defendant's lawyer. *Id*. In order to make such a decision, the defendant must have knowledge about the appeals options available to him. *United States ex rel. Smith v. McMann*, 417 F.2d 648, 654 (2d Cir.1969), *cert. denied*, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105 (1970) (construing *Douglas v. California* as imposing on a state "a duty to warn every person convicted of a crime of his right to appeal...the right to appeal at the expense of the state is a mere illusion if the convicted indigent defendant does not know such a right exists."); *State v. Sims*, 27 Ohio St.2d 79, 272 N.E.2d 87, 91 (1971) (finding that "in the absence of evidence in the record upon which it could be determined that an indigent convicted defendant knowingly and intelligently waived his right of direct appeal...it was error for the Court of Appeals to dismiss the motion for leave to appeal without making such a factual determination.")

In order to be properly informed, a defendant must be told of his right to appeal, the procedures and time limits involved in proceeding with that appeal, and the right to have the assistance of appointed counsel for that appeal. *White*, 180 F.3d at 652 (5th Cir.1999), *Norris v. Wainwright,* 588 F.2d 130, 135 (5th Cir.), *cert. denied*, 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979) The petitioner bears the burden of showing by a preponderance of the evidence that he was not advised of his rights. *Faught v. Cowan*, 507 F.2d 273, 275 (6th Cir.1974), *cert. denied*, 421 U.S. 919, 95 S.Ct. 1583, 43 L.Ed.2d 786 (1975). Further, a defendant cannot base a claim on the court's failure to inform him of his appellate rights if he has personal knowledge of these rights. *Peguero,* 526 U.S. at 29-30, 119 S.Ct. 961(citing *Soto v. U.S.*, 185 F.3d 48, 54 (2d Cir.1999)).

\*\*\*

... Petitioner offers ample evidence supporting his claim. Namely, Petitioner offers (1) his sworn declaration that neither his counsel or the trial court advised him of his appellate right and he did not learn that he could file a delayed appeal until informed by inmate clerks in 1999 (doc. 1); (2) Respondent's statements that Petitioner's defense counsel could not remember if he had advised Petitioner of his right to appeal (doc. 17); and (3) the transcript of the plea and sentencing

25

which are devoid of notice of appeal (*Id.*). Respondent has been unable to offer any evidence showing that Petitioner knew of his appellate rights or was informed about them by either his counsel or the trial judge. Petitioner has successfully shown by a preponderance of the evidence that the trial court judge and his own counsel failed to advise him of his right to appeal, and he was not otherwise aware of this right.

When evaluating a claim for habeas corpus relief, only holdings of the United States Supreme Court may be relied on with authority. *Harris,* 212 F.3d at 944-945. As discussed previously, the Supreme Court has specifically put in place procedural protections to protect indigent defendants, including the right to a transcript, *Griffin*, 351 U.S. 12, 76 S.Ct. 585; the right to appellate counsel, *Douglas*, 372 U.S. 353, 83 S.Ct. 814; and the right to have that counsel provide effective assistance with their appeal, *Evitts,* 469 U.S. 387, 105 S.Ct. 830. The protections set forth by the Supreme Court all assume that the defendant knows of his right to appeal. Because notice is more basic than the rights granted in Supreme Court precedent and is a foundation of Supreme Court case law, precedent mandates that due process is violated when a defendant is not informed of his right to appeal by the trial court or by his counsel. The Ohio Court of Appeals decision denying Petitioner's claim was therefore an unreasonable application of clearly established Supreme Court precedent.

***

When a defendant pleads guilty he limits his options to appeal, but certain appellate avenues remain open. The Supreme Court has previously stressed that an indigent defendant must be afforded certain procedural protections so that they may properly pursue their appellate rights. *See Griffin*, 351 U.S. 12, 76 S.Ct. 585, right for an indigent defendant a transcript for pursuing their appeal; *Douglas,* 372 U.S. 353, 83 S.Ct. 814, indigent defendants have a right to counsel for their first appeal; *Evitts*, 469 U.S. 387, 105 S.Ct. 830, all defendants have the right to effective assistance of appellate counsel. These rights all presuppose that the defendant is informed of the appellate rights. Due process is offended if a defendant who pleads guilty is not made aware of his right to appeal. This proposition is unaffected by the lack of an explicit constitutional requirement.

26

*Id.*, at 746-48.

The transcripts of petitioner's guilty plea and sentencing fail to reflect that petitioner was advised of his right to appeal. The sentencing transcript does indicate that petitioner had a substantial criminal history; however, the record before this Court does not indicate whether any of petitioner's prior convictions involved guilty pleas, or whether or not he had been previously advised that he had the right to appeal a guilty plea. Further, the record before this Court does not indicate whether or not defense counsel advised petitioner that he could appeal his sentence after his guilty plea.

In view of the foregoing, respondent is **DIRECTED** to submit an affidavit from defense counsel addressing the issue of whether he advised petitioner of his right to appeal the guilty plea, and any other documents that may be useful to this Court's consideration of petitioner's allegations in claim three, within twenty (20) days of the date of this order.

## V.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that all of petitioner's claims, with the exception of claim three, be **DISMISSED** as procedurally defaulted. Respondent is **DIRECTED** to submit an affidavit from defense counsel addressing the issue of whether counsel advised petitioner of his right to appeal within twenty (20) days of the date of this order. Respondent may also submit any other documents that will assist in this Court's consideration of whether petitioner was denied his right to appeal because he did not know about, and was not advised of his appellate rights.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed

27

findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge

28

29